J-A35016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAUN D. ROSARIO, | |
| Appellant | No. 933 WDA 2014 |

Appeal from the Judgment of Sentence March 20, 2014
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0001227-2011, CP-63-CR-0001821-2011

BEFORE:  BENDER, P.J.E., SHOGAN, and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JANUARY 11, 2016**

Appellant, Shaun D. Rosario, appeals from the judgment of sentence entered on March 20, 2014, at Washington County docket numbers CR-1227-2011 and CR-1821-2011.  We affirm.

The factual history of this case was set forth by the trial court as follows:

On or about May 10, 2011, [Appellant] was arrested and charged with various offenses stemming from conduct that occurred May 9, 2011 through May 10, 2011.[19]

[19] (The numerals following the initials TT refer to the official transcript of the jury trial proceedings conducted from December 11, 2013, through December 12, 2013.) TT 146; 150.

During trial, the jury heard evidence that Officer Michael Parry of the Donora Police Department received a call on the morning of May 9, 2011, from Mr. Timothy Durka. Mr. Durka,

supervisor of the Borough of Donora's street commission, informed Officer Parry that someone had broken into the borough's dump truck and stole his hammer. Mr. Durka testified that the truck was ransacked. The glove compartment was broken out of the dashboard and his articles were scattered around the truck.

Later that morning, Officer Parry received a call that an unresponsive male was found in the Borough of Donora in an alley. When Officer Parry arrived at the scene, he observed a male lying facing down at the edge of a roadway near a gravel parking lot. Officer Parry identified the unresponsive individual as [Appellant], Shaun Rosario (hereinafter referred to as "[Appellant]").

At the scene, Officer Parry further observed that [Appellant] was holding a hammer with an orange string attached to it in his left hand. Mr. Durka arrived at the scene and identified the hammer in [Appellant's] possession as the one stolen from his truck. Mr. Durka testified that his hammer had an orange string attached to it, which aids him in his line and leveling work. The same orange string was identified in the cab of Mr. Durka's truck.

While the paramedics were treating [Appellant], Officer Parry observed puncture marks on [Appellant's] arms. [Appellant] was transported by paramedics to Mon Valley Hospital.[20]

[20] TT 26-37; 42-47.

It was determined at Mon Valley Hospital that [Appellant] was suffering the effects of an overdose of an unidentified opiate. Stacy Hoffman, a registered nurse at Mon Valley Hospital, testified that she was assigned to observe [Appellant] while he was a patient. When she first encountered [Appellant] he was unconscious. When he regained consciousness, [Appellant] expressed his desire to be released from the hospital. The treating physician, Dr. Gene Manzetti, M.D., explained to [Appellant] the necessity that [Appellant] remain under the care of the hospital. [Appellant] became upset at that news and insisted that he had the right to leave. At this juncture, Dr. Manzetti informed [Appellant] that there was a warrant out for his arrest and when he was discharged from

medical care the police would have to be informed regarding the warrant.

Testimony demonstrated that upon hearing this information [Appellant] became irate and began yelling at Dr. Manzetti. However, [Appellant] ultimately decided to stay at the hospital overnight. Approximately 1:15 a.m. on May 10, 2011, [Appellant] became agitated and demanded information about his treatment. Ms. Hoffman provided him with the results of his toxicology screen. [Appellant] read over the report and then queried whether there was anyone in the building with weapons. [Appellant] then began to stand up with the aid of Ms. Hoffman and nursing assistant Carol May. Nurse Hoffman testified that [Appellant] then suddenly pushed past them and slammed the door shut, trapping everyone inside. [Appellant] expressed that he was not going to go to jail and no one was leaving the room until he could go home.

Security was called to the area. [Appellant] blockaded the door with his body and pulled out his IV and catheter. As a result, blood began pouring out of the IV and [Appellant] began deliberately spraying it all over the room. Testimony demonstrated that [Appellant], who had previously been diagnosed with hepatitis C, spilled blood onto Ms. Hoffman. [Appellant] then demanded Ms. Hoffman remove the catheter. [Appellant] permitted another nurse to retrieve a needleless syringe, which was necessary for the removal, and provide it to Ms. Hoffman. After the catheter was removed, two security guards, Edward Swick and Robert Ashbaugh, arrived and attempted to make entry to the room, but [Appellant] continued to block the door with his body.

[Appellant] picked up the syringe and began waiving it around and threatening Ms. Hoffman, Ms. May and the security guards stating he would stab them. [Appellant] then attempted to grab a chair at which time he took some of his weight off of the door and security was able to make entry into the room. [Appellant] then grabbed Ms. May and put her in front of him to block himself from security. He then lifted Ms. May off of the ground. While Ms. May was still in his grasp, the security guards grabbed [Appellant] and put him onto the bed. He continued threatening that he was going to stab everyone and making motions to that effect. Testimony demonstrated that he swung at the upper body and neck areas of the security guards and

- 3 -

nurses numerous times with the syringe. Ms. May was finally freed from [Appellant's] grasp and she and Ms. Hoffman were able to exit the room. [Appellant] finally was subdued on the hospital bed, but not before he suddenly lunged up at the security guards and grabbed their shirts and attempted to take pens from the front pockets of their shirts.[21]

[21] TT 59-72; 79-80; 88-97; 107-114.

Police and Constable Walter Fronzaglio arrived at the scene at about 1:35 a.m. Constable Fronzaglio testified that he knew [Appellant] from a prior incident and spoke briefly to make sure that he was calm. [Appellant] was discharged, handcuffed, shackled and taken out of the hospital in a wheelchair by Constable Fronzaglio. As [Appellant] was being taken out of the hospital, [Appellant] asked Ms. Hoffman for a pen, but she did not oblige.[22]

[22] TT 72-75. 115-117; 124-127; 137-138.

Constable Fronzaglio escorted [Appellant] to his van. The Constable testified that his van was modified for transporting purposes. Primarily, this modification was due to a prior escape that occurred in 2009 by [Appellant]. The van's middle row of seats had been removed and there was a chain attached to the seat to secure offenders. However, there was no cage protecting the Constable from the prisoners being transported. [Appellant] was placed in the back passenger side of the van and his leg shackles were secured to the frame of the seat by the chain.

During the transport of [Appellant] to the Washington County Correctional Facility, the Constable offered to stop and get [Appellant] a hamburger and coffee which [Appellant] acknowledged, "I appreciate that Wal." However, soon after that conversation, [Appellant] attacked Constable Fronzaglio. [Appellant] began screaming "I want out of this fucking van. I'm getting the fuck out of here. I want to be free." Constable Fronzaglio testified that [Appellant] then jumped on him while he was driving and reached for his gun on his right hip. Constable Fronzaglio was carrying a .40 caliber pistol in a leather snap holster. In response, Constable Fronzaglio let go of the steering wheel and grabbed [Appellant's] hand that was on his gun. Constable Fronzaglio also grabbed [Appellant's] head and tried

to pull him away from his person. During the struggle the van veered off the road and flipped over.[23]

_____
[23] TT 142-151; 217-220.

The van landed upside down on an embankment. Constable Fronzaglio testified he could not see anything and was disoriented. He believed he was lying on the roof of the van and was still struggling with [Appellant]. [Appellant] then tried to crawl out of the van. Constable Fronzaglio began punching him in the head and yelled for [Appellant] to get back into the van. Constable Fronzaglio was able to free himself and crawl out of an opening near the passenger side window and exited the van. [Appellant] was still trapped in the van.[24]

_____
[24] TT 151-152; 220-224.

Upon noticing Constable Fronzaglio waving his arms on the side of the road, a truck driver, Lawrence Prenni, called 9-1-1 and pulled over to see if he could be of assistance. Constable Fronzaglio asked Mr. Prenni to assist him in pulling [Appellant] out of the van. As the Constable was pulling [Appellant] from the wreckage, [Appellant] stabbed Constable Fronzaglio in the calf with a knife. Mr. Prenni grabbed the knife from [Appellant] and threw it. Mr. Prenni subdued [Appellant] until the Pennsylvania State Police arrived.[25]

_____
[25] TT 152-154; 224-227; 239-246.

The Pennsylvania State Police arrived at the scene and were able to pull [Appellant] from the van. Constable Fronzaglio testified that he had articles from other prisoners in his van that he holds in safe keeping until offenders retrieve them, as such articles are not permitted to go into the jail. He testified he had a knife in the van from such an instance. [Appellant] was searched at the scene by the Pennsylvania State Police and they discovered [Appellant] had one of the Constable's spare .40 caliber magazines in his pocket.[26]

_____
[26] TT 154-157; 175; 228; 262-264.

Constable Fronzaglio was taken to the hospital by the Donora Police. At Mon Valley Hospital he was treated for a stab

wound to the right calf and bumps and bruises sustained during the crash. [Appellant] was taken into custody.[27]

   [27] TT 158-174; 232.

   On May 19, 2011, [Appellant] was transported to Magistrate Judge Thompson's office by Pennsylvania State Police Trooper Ryan Deems and Trooper Douglas Rush. Trooper Deems stated to [Appellant] that he did not want to have any problems on the return trip to the Washington County Correctional Facility. In response, [Appellant] stated, "If I was locked up like this in the first place, none of this would have happened,"[28] referring to the manner in which he was secured in the State Police vehicle.

   [28] TT 282-284; 298-299.

Trial Court Opinion, 1/2/15, at 8-13.

On December 12, 2013, the jury found Appellant guilty of aggravated assault to an enumerated person (attempt to cause serious bodily injury); aggravated assault to an enumerated person (causing bodily injury); aggravated assault with a deadly weapon; assault by prisoner; disarming a law enforcement officer; criminal attempt (escape); six counts of simple assault; two counts of terroristic threats; two counts of false imprisonment; and two counts of unlawful restraint.

Following the preparation and review of a pre-sentence investigation ("PSI"), the trial court sentenced Appellant as follows:

At No. 1227 -2011:

1. On the charge of Aggravated Assault to Enumerated Person-Attempt to Cause Serious Bodily Injury to Constable Walter Fronzaglio, A Felony of the 1st Degree, the Court sentenced [Appellant] to pay the costs of prosecution; pay restitution to Walter Fronzaglio in the amount of $5200; be confined to

an appropriate state correctional institution for no less than seven and one half (7½) years and no more than fifteen (15) years. [Appellant] was further ordered to be assessed for alcohol and other drug addiction, receive a mental health evaluation and complete a course of anger management.

2. On the charge of Aggravated Assault to Enumerated Person -Causing Bodily Injury to Walter Fronzaglio, a Felony of the 2nd Degree, the Court imposed no further sentence as the Court found that charge merged with the charge of Aggravated Assault-Attempt to Cause Serious Bodily Injury.

3. On the charge of Aggravated Assault-Causing Bodily Injury with a Deadly Weapon, the Court imposed no further sentence as that charge merged for sentencing purposes.

4. On the charge of Assault by a Prisoner, a Felony of the 2nd Degree, the Court found that count does not merge and sentenced [Appellant] to an appropriate State Correctional Facility for no less than two (2) years to no more than four (4) years to run concurrently to the Aggravated Assault and under the same terms and conditions.

5. On the charge of Disarming Law Enforcement Officer, with respect to Walter Fronzaglio, a Felony of the 3rd Degree, the Court sentenced [Appellant] to an appropriate State Correctional Institution for no less than one and one half (1½) years to no more than three (3) years to run consecutively to the Aggravated Assault and under the same terms and conditions.

6. On the charge of Criminal Attempt-Escape with a Deadly Weapon, a Felony of the 3rd Degree, the Court sentenced [Appellant] to an appropriate State Correctional Institution for no less than two (2) years and no more than four (4) years to run consecutively to the Aggravated Assault and under the same terms and conditions.

7. On the charge of Simple Assault, two counts, with respect to Walter Fronzaglio, the Court imposed no further sentence as the Court found that charge merged with the Aggravated Assault. The Court further ordered that [Appellant] have no contact with Walter Fronzaglio.

At No. 1821-2011:

8. On the charge of Terroristic Threats with the Intent to Terrorize Another, with respect to Edward Swick, a Misdemeanor of the 1st Degree, the Court sentenced [Appellant] to pay the costs of prosecution; be confined in an appropriate State Correctional Institution for no less than one (1) year and no more than two (2) years to run consecutively to No. 1227-2011 and under the same terms and conditions.

9. On the charge of Terroristic Threats with the Intent to Terrorize Another, with respect to Robert Ashbaugh, a Misdemeanor of the 1st Degree, the Court sentenced [Appellant] to an appropriate State Correctional Institution for no less than one (1) year[] and no more than two (2) years consecutive to Count (1), Terroristic Threats, and consecutive to No. 1227-2011, and under the same terms and conditions.

10. On the charge of Simple Assault, with respect to Carole May, a Misdemeanor of the 2nd Degree, the Court sentenced [Appellant] to an appropriate State Correctional Institution for no less than one (1) year to no more than two (2) years consecutive to the Terroristic Threats counts and consecutive to No. 1227-2011 and under the same terms and conditions.

11. On the charge of Simple Assault, with respect to Stacy Hoffman, Misdemeanor of the 2nd Degree, the Court sentenced [Appellant] to an appropriate State Correctional Institution for no less than one (1) year and no more than two (2) years to run consecutively to the sentences above and consecutive to No. 1227-2011 and under the same terms and conditions.

12. On the charge of Simple Assault, with respect to Edward Swick, a Misdemeanor of the 2nd Degree, the Court sentenced [Appellant] to an appropriate State Correctional Institution for no less than one (1) year and no more than two (2) years to run concurrently to the sentences above and under the same terms and conditions.

13. On the charge of Simple Assault, with respect to Robert Ashbaugh, a Misdemeanor of the 2nd Degree, the Court sentenced [Appellant] to an appropriate State Correctional Institution for no less than one (1) year and no more than two (2) years to run concurrently to the sentences above and under the same terms and conditions.

14. On the charge of Unlawful Restraint-Exposing Another to Risk of Serious Bodily Injury, with respect to Carole May, a Misdemeanor of the 1st Degree, the Court sentenced [Appellant] to an appropriate State Correctional Institution for no less than one (1) year and no more than two (2) years consecutive to the sentences above and under the same terms and conditions.

15. On the charge of Unlawful Restraint-Exposing Another to Risk of Serious Bodily Injury, with respect to Stacy Hoffman, Misdemeanor of the 1st Degree, the Court sentenced [Appellant] to an appropriate State Correctional Institution for no less than one (1) year and no more than two (2) years consecutive to the sentences above and under the same terms and conditions.

16. On the charge of False Imprisonment, two counts, the Court imposed no further sentence as the Court found that charge merged for sentencing purposes.

17. An added condition of [Appellant's] sentence is that [he] have no contact with Edward Swick, Robert Ashbaugh, Carole May, Stacy Hoffman or any of their families and that he have no contact with Mon Valley Hospital.

[Appellant's] total aggregate sentence was seventeen (17) years to no more than thirty-four (34) years in an appropriate state correctional institution.

Trial Court Opinion, 1/2/15, at 2-6 (internal quotation marks omitted).

Appellant filed a timely post-sentence motion for reconsideration or modification of his sentence, which the trial court denied on May 8, 2014.

This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issues for this Court's consideration:

1. Appellant was denied effective assistance of counsel guaranteed by the Fifth and Sixth Amendments to the United States Constitutions. Multiple counsel over the pendency of the proceedings created a systemic failure resulting in ineffective assistance of counsel in contradiction of the Constitution and Pennsylvania Rules of Professional Conduct.

2. The Pennsylvania Sentencing Guidelines are unconstitutional because specific and detailed findings of fact are not required to be made on the record considering, among other factors, sentencing factors, mitigation criteria, protection of the public, gravity of the offense, and rehabilitative needs of Appellant and the ambiguous and unconstitutional sentences should be reversed.

3. The sentences imposed violated the Pennsylvania Sentencing Code and the fundamental norm underlying the sentencing process because the consecutive sentences were manifestly excessive to the crimes, application of the guidelines were clearly unreasonable in light of mitigating factors, and an individualized sentence was not imposed and, as a result, the sentences should be reversed.

4. A sentence imposed with credit of 444 days for time served failed to include all time during which Appellant was detained after arrest and therefore violated Appellant's constitutional right to liberty and freedom and, as such, the sentence should be reversed.

Appellant's Brief at 2-3.

In his first issue, Appellant avers that he was denied the effective assistance of counsel; however, this issue is not properly before our Court. In **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013), our Supreme

Court reiterated the holding from **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002), and stated that generally, "claims of ineffective assistance of counsel are to be deferred to PCRA[1] review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal." **Holmes**, 79 A.3d at 576. The **Holmes** Court, however, recognized two exceptions to the general rule whereby claims of ineffective assistance of counsel could be raised on direct appeal: (1) where the trial court determines that a claim of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted; or (2) where the trial court finds good cause for unitary review, and the defendant makes a knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA. **Id**. at 564, 577 (footnote omitted).

Here, Appellant did not satisfy either of the aforementioned exceptions. The trial court did not conclude that Appellant's claim of ineffectiveness is meritorious and apparent from the record necessitating immediate consideration, and Appellant has not expressly waived his right to pursue PCRA review. Trial Court Opinion, 1/2/15, at 14. Accordingly, we

---

[1] Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.

dismiss this claim without prejudice to Appellant's right to seek collateral review under the PCRA.

In Appellant's second issue, he avers that the Pennsylvania Sentencing Guidelines are unconstitutional because they do not require findings of fact concerning mitigating factors, protection of the public, gravity of the offense, and rehabilitative needs to be made on the record. Appellant's Brief at 10-11. After review of Appellant's brief on appeal, we conclude that this challenge to the constitutionality of the Pennsylvania Sentencing Guidelines is woefully undeveloped. Appellant presents a bald challenge to the Pennsylvania Sentencing Guidelines and quotes a portion of 18 U.S.C. § 3553 concerning federal sentences. Appellant's Brief at 11. However, Appellant never develops or supports any argument on this claim of alleged constitutional dimension, and he fails to state which constitutional provision was breached. *See Commonwealth v. Edmunds*, 586 A.2d 887, 895 (Pa. 1991) (stating the minimum factors to be presented and briefed by a party challenging the constitutionality of a statute). Accordingly, we deem the issue waived. *See Commonwealth v. Gonzalez*, 112 A.3d 1232, 1240 (Pa. Super. 2015) (reiterating that where an appellant's brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop it in any meaningful fashion, that issue is waived).

In his third issue on appeal, Appellant avers that the sentences imposed by the trial court violated the Pennsylvania Sentencing Code and

the fundamental norms underlying the sentencing process because the consecutive sentences were manifestly excessive and clearly unreasonable. This assertion of error presents a challenge to the discretionary aspects of his sentence.

It is well settled that a challenge to the discretionary aspects of a sentence is a petition for permission to appeal, as the right to pursue such a claim is not absolute. **Commonwealth v. Treadway**, 104 A.3d 597, 599 (Pa. Super. 2014). Before this Court may review the merits of a challenge to the discretionary aspects of a sentence, we must engage in the following four-pronged analysis:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

**Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010) (citing

**Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006)).

We note that Appellant has met the first three parts of the four-prong test: Appellant timely filed an appeal; Appellant preserved the issues in a post-sentence motion; and Appellant included a statement pursuant to

Pa.R.A.P. 2119(f) in his brief.[2] Thus, we next assess whether Appellant has raised a substantial question with respect to the issues he raised.

A determination as to whether a substantial question exists is made on a case-by-case basis. **Commonwealth v. Sierra**, 752 A.2d 910 (Pa. Super. 2000). This Court will grant the appeal "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Id.** at 912–913.

In his brief, Appellant argues that the consecutive sentences imposed on his convictions resulted in a manifestly excessive and unreasonable sentence. Appellant's Brief at 11. We conclude that Appellant has presented a substantial question. **See Dodge**, 77 A.3d at 1269 (stating that claims of a manifestly excessive sentence due to the imposition of consecutive sentences raises substantial question).

However, Appellant also complains that the trial court failed to consider mitigating factors. Appellant's Brief at 12. "[T]his Court has held

---

[2] While Appellant included a Pa.R.A.P. 2119(f) statement, Appellant's Brief at 6, it is deficient because it fails to articulate how his sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process. **Commonwealth v. Dodge**, 77 A.3d 1263, 1271 (Pa. Super. 2013). However, because the Commonwealth has not objected to this deficiency, and because appellate review is not hampered, we decline to find waiver. **Id**.

on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa. Super. 2013) (quoting *Commonwealth v. Downing*, 990 A.2d 788, 794 (Pa. Super. 2010) (citation omitted)). Accordingly, we conclude Appellant's argument that the trial court failed to give adequate weight to mitigating factors does not present a substantial question appropriate for our review.[3]

> Our standard of review in appeals of sentencing is well settled:
>
> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Mann*, 957 A.2d 746, 749 (Pa. Super. 2008).

> In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference.

*Commonwealth v. Mouzon*, 828 A.2d 1126, 1128 (Pa. Super. 2003).

---

[3] Were we to reach this issue, we would conclude it to be meritless. As noted above, the trial court had the benefit of a PSI. It is well settled that where the sentencing court had the benefit of a PSI, this Court can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Moury*, 992 A.2d at 171 (citations omitted).

"Generally, Pennsylvania law 'affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question.'" **Commonwealth v. Prisk**, 13 A.3d 526, 533 (Pa. Super. 2011) (quoting **Commonwealth v. Pass**, 914 A.2d 442, 446–447 (Pa. Super. 2006)); 42 Pa.C.S. § 9721; **see also Commonwealth v. Hoag**, 665 A.2d 1212, 1214 (Pa. Super. 1995) (stating appellant is not entitled to "volume discount" for his crimes by having all sentences run concurrently).

The trial court sentenced Appellant in the standard range of the Sentencing Guidelines on each of his eighteen separate criminal convictions. While the trial court ordered some of Appellant's sentences to be served consecutively to one another, the trial court also ordered several of the sentences to be served concurrently. The trial court addressed Appellant's challenge as follows:

> As set forth on the record, the Sentencing Court articulated several aggravating circumstances which it felt warranted sentencing [Appellant] to consecutive sentences with respect to the charges, including the fact that multiple crimes and multiple victims were involved.[4] The Trial Court found it

---

4   In the sentencing transcript, the trial court discussed the PSI and mitigating factors such as Appellant's drug use and depression. N.T., 3/20/14, at 58. However, the trial court also noted aggravating factors such as the existence of five victims, Appellant was on parole when committed the instant crimes, Appellant blamed others for his actions, and he lacked remorse. **Id**. at 58-59.

appropriate that [Appellant] receive separate and distinct sentences for each criminal activity. Nevertheless, [Appellant] was sentenced within the statutory limits. Under the circumstances, the Court does not find [Appellant's] sentence to be excessive.

\* \* \*

A review of the sentencing transcript reveals that all relevant factors, including [Appellant's] work, criminal, and family history, were considered in arriving upon [Appellant's] sentence. Additionally, the Trial Court considered the sentencing guidelines when determining the appropriateness of the sentence.

The Trial Court's sentence was reasonable and not the result of any prejudice, bias or ill-will. Accordingly, the Trial Court did not abuse its discretion and [Appellant's] sentence is appropriate.

Trial Court Opinion, 1/2/15, at 23-24.

We agree with the trial court, and we discern no abuse of discretion in the sentences imposed individually or in the aggregate. Moreover, aside from Appellant's sweeping claim of excessiveness, he has failed to explain how the sentences imposed were an abuse of discretion, and we conclude that Appellant is not entitled to any further "volume discount" for his multiple offenses. *Hoag*, 665 A.2d at 1214. Based upon the foregoing, Appellant's sentence is not excessive or unreasonable in light of the crimes committed and the sentencing court's consideration of the individual circumstances of this case. *Prisk*, 13 A.3d at 533; *Commonwealth v. McWilliams*, 887 A.2d 784, 787 (Pa. Super. 2005) (holding that standard-range sentences were not excessive even though they ran consecutively).

While Appellant raised a substantial question concerning the sentences imposed, after review, we conclude that there is no merit to his claim and no relief is due. The sentences were not manifestly excessive, and the trial court did not abuse its discretion.

Lastly, Appellant argues that the trial court erred in failing to provide proper credit for time served. Appellant's argument on this issue consists of only one sentence: "A sentence imposed with credit of 444 days for time served failed to include all time during which Appellant was detained after arrest and therefore violated Appellant's constitutional right to liberty and freedom and, as such, the sentence should be reversed." Appellant's Brief at 14.

Although Appellant provided no argument on this issue, we shall address this issue because a challenge to the trial court's failure to award time-credit implicates the legality of the sentence and cannot be waived. ***Commonwealth v. Tout-Puissant***, 823 A.2d 186, 188 (Pa. Super. 2003). Furthermore, issues relating to the legality of a sentence are questions of law; our standard of review over such questions is *de novo*, and our scope of review is plenary. ***Commonwealth v. Cardwell***, 105 A.3d 748, 750 (Pa. Super. 2014) (citations and quotation marks omitted).

Appellant was arrested and incarcerated on May 10, 2011, in the instant case. The 601 days between May 10, 2011, and December 31, 2012, were credited to a sentence Appellant was serving for crimes

committed in Westmoreland County. N.T., 3/20/14, at 40. The 444 days between January 1, 2013, and March 20, 2014, the day upon which Appellant was sentenced in the instant case, were credited toward the sentence in the case at bar. *Id*. at 40, 67. This Court has held that a criminal defendant is not entitled to "receive credit against more than one sentence for the same time served." *Commonwealth v. Ellsworth*, 97 A.3d 1255, 1257 (Pa. Super. 2014) (quoting *Commonwealth v. Merigris*, 681 A.2d 194, 195 (Pa. Super. 1996)); and *see* 42 Pa.C.S. § 9760(4).[5] Accordingly, we cannot conclude that the trial court failed to award Appellant proper credit for time served, and we discern no error.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentenced affirmed.

_____

[5] Section 9760(4) provides as follows:

> If the defendant is arrested on one charge and later prosecuted on another charge growing out of an act or acts that occurred prior to his arrest, credit against the maximum term and any minimum term of any sentence resulting from such prosecution shall be given for all time spent in custody under the former charge that has not been credited against another sentence.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/11/2016</u>